UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
: 
UNITED STATES OF AMERICA                :
: 
    - v. -                              :      09 Cr. 1222 (RJS)
: 
DAVID SLAINE,                           :
: 
            Defendant.                  :
: 
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# GOVERNMENT'S SENTENCING MEMORANDUM


PREET BHARARA
United States Attorney for the Southern
District of New York

ANDREW L. FISH
REED M. BRODSKY
RICHARD C. TARLOWE
Assistant United States Attorneys

    - Of Counsel -



*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York  10007*

January 9, 2012

Honorable Richard J. Sullivan
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York  10007

    **Re:  United States v. David Slaine,**
         **09 Cr. 1222 (RJS)**

Dear Judge Sullivan:

        The Government respectfully submits this letter to advise the Court of the pertinent facts concerning the assistance that defendant David Slaine has rendered in the investigation and prosecution of other persons.  In light of these facts, the Government moves, pursuant to Section 5K1.1 of the Sentencing Guidelines, that the Court sentence the defendant in light of the factors set forth in Section 5K1.1(a)(1)-(5) of the Guidelines.

        On December 18, 2009, Slaine pleaded guilty to Counts One and Two of the above-captioned Information.  Count One of the Information charges the defendant with conspiring with others to commit securities fraud, in violation of Title 18, United States Code, Section 371, in connection with a scheme to defraud by executing securities trades based on material nonpublic information regarding upcoming UBS analyst upgrades and downgrades.  This charge carries a maximum sentence of five years' imprisonment, a maximum term of three years' supervised release, a maximum fine, pursuant to Title 18, United States Code § 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to a person other than the defendant as a result of the offense, and a mandatory $100 special assessment.

Honorable Richard J. Sullivan
January 9, 2012
Page 2

      Count Two of the Information charges the defendant with securities fraud, in violation of Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2; and Title 18, United States Code, Section Two, in connection with a scheme to defraud by executing securities trades based on material nonpublic information regarding an upcoming UBS analyst downgrade.  This charge carries a maximum sentence of 20 years' imprisonment, a maximum term of three years' supervised release, a maximum fine of $5 million, and a mandatory $100 special assessment.

I.    **Slaine's Criminal Conduct**

      Between February and December 2002, David Slaine worked as the head trader at a hedge fund called Chelsey Capital.  In early 2002, Erik Franklin (who had previously worked at Chelsey) rejoined the hedge fund to work as an analyst.  Several months earlier (in November 2001), Franklin had begun to receive material, nonpublic information from UBS employee Mitchel Guttenberg.  Guttenberg was providing Franklin with nonpublic information regarding upcoming upgrades and downgrades in UBS analysts' securities recommendations (the "UBS Inside Information").

      After Franklin rejoined Chelsey Capital in early 2002, he began to share the UBS Inside Information with Slaine and another Chelsey trader, Mark Lenowitz.  Slaine, Lenowitz and Franklin used the UBS Inside Information to execute profitable trades on behalf of Chelsey.  As a result, Chelsey earned approximately $3.4 million in profits.  In addition, Slaine used the UBS Inside Information to earn approximately $532,287 in his personal trading account.  At first, Slaine did not know that Franklin was providing misappropriated information to Chelsey, but he eventually understood that Franklin was providing information that had been misappropriated from UBS.[1]

---

[1]    Franklin and Lenowitz both pleaded guilty to conspiracy and securities fraud charges pursuant to cooperation agreements with the Government, and the Government submitted letters pursuant to Guidelines Section 5K1.1 in connection with their sentencings.  Franklin was sentenced to three years' probation, including 12 months' home confinement; 200 hours of community service; forfeiture of $2,590,000; and a $400 special assessment in the case captioned United States v. Franklin, 07 Cr. 164 (GEL).  Lenowitz was sentenced to time served; three years' supervised release, including six months' home confinement; 160

Honorable Richard J. Sullivan
January 9, 2012
Page 3


## II.   Slaine's Cooperation

Slaine's cooperation has been nothing short of extraordinary.  Slaine's cooperation was one of the key factors that led to a series of successful investigations and prosecutions of numerous individuals for insider trading crimes.

Indeed, it is difficult to overstate the significance of Slaine's cooperation with the Government.  At the outset, Slaine alerted the Government to the potential insider trading activities of Craig Drimal.  The Government was not aware of Drimal's crimes at the time, and it is entirely unclear whether the Government would have discovered Drimal's crimes and Zvi Goffer's criminal insider trading network but for Slaine's cooperation.

At the Government's direction, Slaine had numerous consensually recorded meetings and conversations with Drimal and Drimal's confederates, including Zvi Goffer.  Based, in part, on those recordings and other information provided by Slaine, the Government was able to obtain court authorization to intercept wire communications over Drimal's cellular telephone.  This led to wiretaps over several other telephones, including the cellular telephones of Zvi Goffer, Jason Goldfarb (the intermediary between Goffer and attorneys who were providing inside information), Gautham Shankar (one of Zvi Goffer's co-conspirators and a source of inside information), and Thomas Hardin (Shankar's source).  Accordingly, with Slaine's assistance, the Government established that Goffer bribed attorneys to obtain material, nonpublic information about clients' merger and acquisition activities.  Slaine's cooperation led directly to the successful investigation and prosecution of Zvi Goffer and other members of Goffer's insider trading network.

In addition, Slaine was a key witness at the trial of Zvi Goffer, Emanuel Goffer, and Michael Kimelman.  Slaine spent extensive time preparing to testify at trial and reviewing draft transcripts of recorded conversations.

Finally, the fruits of Slaine's cooperation enabled the Government to launch several important and highly successful

---

hours of community service; forfeiture of $337,576; and a $200 special assessment in the case captioned United States v. Lenowitz, 07 Cr. 146 (SHS).

Honorable Richard J. Sullivan
January 9, 2012
Page 4

investigations and prosecutions of other insider trading networks, including Raj Rajaratnam's insider trading network and a "matchmaking" insider trading network.

### A. Slaine's Consensually Recorded Meetings and Telephone Conversations

After being approached by the Government in July 2007, Slaine alerted the Government to the potential insider trading activities of Craig Drimal.  Then, acting at the direction of agents of the Federal Bureau of Investigation ("FBI"), Slaine had numerous consensually recorded conversations with Drimal.  During these conversations, Drimal described an ongoing insider trading conspiracy, in which attorneys were providing Drimal's confederate (Zvi Goffer) with material, nonpublic information about potential mergers and acquisitions, including the acquisition of 3Com Corporation.  For example, in September 2007, Drimal told Slaine, among other things, that his source (Zvi Goffer) paid cash to the lawyer providing the 3Com information, and that the lawyer worked at a firm called "Ropeson."  Drimal also told Slaine that he did not know why the lawyer was risking his career and possibly "jail" by providing such information.

Acting at the direction of the FBI, Slaine then had several consensually recorded meetings with Zvi Goffer and Goffer's business partners -- Emanuel Goffer and Michael Kimelman.  During these meetings, Slaine was able to elicit incriminating statements regarding Goffer's insider trading network.  For example, on August 4, 2008, Slaine met with Drimal, Zvi Goffer, Emanuel Goffer, and Kimelman.  During this meeting, Slaine pressed the conspirators to identify their source of information.  Zvi Goffer said that Slaine did not need to know and did not want to know the source.  Zvi Goffer added that, if someone from the Government ever asks where Slaine got the information, Slaine would be better off being able to say that he did not know and that was "better for everybody."  Kimelman then remarked that the information was coming from a guy fixing a pothole, thereby establishing that, at a minimum, Kimelman was consciously avoiding learning the identity of Goffer's inside source.

Slaine's ability to elicit incriminating statements from Zvi Goffer, Emanuel Goffer, and Kimelman was particularly noteworthy, because he was meeting with individuals with whom he had no prior relationship.

Honorable Richard J. Sullivan
January 9, 2012
Page 5

In addition to obtaining consensual recordings of meetings and conversations with Drimal, Zvi Goffer, Emanuel Goffer, and Kimelman, Slaine also had dozens of consensually recorded conversations with other potential subjects of Government investigations.

Further, during the course of many months, Slaine worked closely with the FBI and provided information on an ongoing basis regarding the securities industry generally and the workings and operations of certain hedge funds. Slaine's general information was useful in enhancing the FBI's ability to understand and investigate insider trading networks throughout the securities industry.

B.  **Slaine's Cooperation Led to a Successful Wiretap Investigation**

The Government used Slaine's conversations with Drimal regarding ongoing insider trading to obtain authorization to intercept wire communciations over Drimal's cellular telephone. Based on, among other things, the evidence obtained through earlier wiretaps, the Government subsequently obtained authorization to intercept wire communications over the cellular telephones of Zvi Goffer, Goldfarb, Shankar and Hardin. The Government would not have been able to obtain these wiretap authorizations without Slaine's cooperation, and, as set forth in this letter, evidence obtained through the wiretaps led to the successful prosecution of numerous invididuals.

C.  **Slaine's Trial Testimony and the Successful Prosecution of Zvi Goffer and His Coconspirators**

Slaine was a key witness at the trial of Zvi Goffer, Emanuel Goffer, and Michael Kimelman. Slaine described his meetings and conversations with the three trial defendants and Drimal, and he also provided background about the securities industry. In preparation for his trial testimony, Slaine spent many hours listening to recordings, reviewing draft transcripts, and meeting with prosecutors. His testimony, together with the recordings he obtained, was crucial to the successful prosecution of all three trial defendants.

Slaine's cooperation also led to the guilty pleas of the other defendants in the <u>Goffer</u> case (Drimal, Arthur Cutillo, Jason Goldfarb, and David Plate) and other coconspirators who were charged separately (Brien Santarlas, Gautham Shankar, Franz

Honorable Richard J. Sullivan
January 9, 2012
Page 6

Tudor, Thomas Hardin, and Michael Cardillo).  Because of Slaine's cooperation, the Government was able to confront the latter five individuals and to obtain their cooperation in insider trading investigations.

### D.  Slaine's Cooperation Played a Role in Other Successful Insider Trading Prosections

The fruits of Slaine's cooperation directly and indirectly fueled several other significant and successful insider trading investigations and prosecutions.

For example, the Government cited intercepted wire communications over Drimal's cellular telephone and Goffer's cellular telephone in the applications to intercept wire communications over a cellular telephone used by Raj Rajaratnam.  The Government obtained authorization to intercept wire communications over Rajaratnam's cellular telephone based in part on the fruits of the Drimal and Goffer wiretaps.  Indeed, Judge Holwell cited conversations intercepted over the Drimal and Goffer telephones in ruling that there was probable cause to wiretap Rajaratnam's cellular telephone and rejecting the Rajaratnam defendants' motions to suppress the wiretaps.  The wiretaps over Rajaratnam's cellular telephone captured critical evidence of Rajaratnam's insider trading network, which the Government used successfully in connection with the prosecution of Rajaratnam in the case captioned United States v. Rajaratnam et al., 09 Cr. 1184 (RJH), as well as the prosecution of Rajaratnam's numerous coconspirators.  Moreover, several of Rajaratnam's coconspirators have cooperated with the Government.  They have provided and continue to provide the Government with useful information regarding insider trading activities and ongoing criminal investigations.

Similarly, Slaine's cooperation led to the approach of other individuals who in turn cooperated with the Government.  For example, Shankar and Hardin both cooperated with the Government.  Hardin's cooperation led the Government to another individual, who in turn led the Government to an individual named Karl Motey, who pleaded guilty to insider trading-related charges in the case captioned United States v. Motey, 10 Cr. 1249 (JSR).  Motey's cooperation led the Government to obtain authorization for additional wiretaps over other telephones, and led to the successful prosecution of insiders and others who were providing material, nonpublic information through a matchmaking firm called Primary Global Research in the case captioned United States v.

Honorable Richard J. Sullivan
January 9, 2012
Page 7

Nguyen et al., 11 Cr. 32 (JSR).  The Government's investigations arising out of wiretaps obtained based, in part, on Motey's cooperation remain ongoing.

Thus, the Government continues to use the derivative fruits of Slaine's cooperation in other charged cases and ongoing investigations.

### III. Conclusion

Slaine's cooperation with the Government was truly exceptional.  Slaine identified a potential insider trading network, had numerous consensually-recorded conversations to develop evidence of the insider trading activities of others, and provided the Government with the evidence necessary to commence a wiretap investigation.  Slaine's cooperation led directly to the successful investigation and prosecution of Zvi Goffer, Emanuel Goffer, Michael Kimelman, Arthur Cutillo, Brien Santarlas, Gautham Shankar, Franz Tudor, David Plate, Thomas Hardin, and Michael Cardillo.  Moreover, evidence gathered by Slaine played a role in, among other things, the successful prosecution of Raj Rajaratnam and his coconspirators, as well as the defendants in the Primary Global Research case.  Indeed, perhaps the greatest impact of Slaine's cooperation is the fact that his assistance was the launching point for many successful and ongoing criminal investigations of multiple insider trading networks.

Because of the quality of the information provided by Slaine, all of the defendants described above ultimately pleaded guilty or were convicted at trial.  This has sent a strong message to the financial community and the public at large that insider trading will be both detected and prosecuted successfully.  Without Slaine's cooperation, the Government may well have never uncovered the insider trading activities of Zvi Goffer and his network, and the numerous investigations arising in part out of Slaine's cooperation would have been hampered considerably, if not completely.

The successful prosecutions resulting from Slaine's cooperation have received widespread public attention and, as a result, should deter others who would otherwise be tempted to engage in similar misconduct.

Slaine's exceptional and timely cooperation has provided substantial assistance to the Government in the investigation and prosecution of numerous individuals.

```
Honorable Richard J. Sullivan
January 9, 2012
Page 8

Therefore, this Court should sentence Slaine in light of the
factors set forth in Section 5K1.1(a)(1)-(5) of the Sentencing
Guidelines.

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney



                         By:         /s/
                              Andrew L. Fish
                              Reed M. Brodsky
                              Richard C. Tarlowe
                              Assistant United States Attorneys
                              Tel.:  (212) 637-2548/2492/2330


cc:  U.S. Probation Officer Robert Flemen
     Stephen E. Kaufman, Esq.
```